FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 JAN 23  PM 12: 56

CLERK'S OFFICE
AT BALTIMORE

BY_____ \_\_\_\_ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
<u>NORTHERN DIVISION</u>

WILLIAM C. BOND
P.O. Box 4823
Baltimore, Maryland 21211

   Plaintiff *pro se*,

v.

   Civil Action No.: **RDB15CV0199**

JOHNNY L. HUGHES
United States Marshal
United States Marshals Service
District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

  and

"UNKNOWN NAMED MARYLAND U.S. JUDGES"
c/o The Hon. Catherine C. Blake
Chief Judge
United States District Court
District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201,

   Defendants.

\* \* \* \* \* \* \* \* \*

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF WITH DEMAND FOR JURY TRIAL

Comes now plaintiff, William C. Bond, *pro se*, (hereinafter "Plaintiff") and brings this lawsuit against the United States Marshal for the District of Maryland, his office & officers, and the

"Unknown Named Maryland U.S. Judges" of the United States District Court for the District of Maryland, acting in their individual capacities, (hereinafter "Defendants").

This is a civil action for injunctive relief to enjoin ongoing and long-standing governmental misconduct and fraud regarding the misuse of the U.S. Marshals Service's Maryland gun range(s) and for Qui Tam and/or Qui Tam-style relief to recover all damages, fines, interest, and any other recoverable monies on behalf of the executive branch; as well as any executive branch rewards associated with the alleged governmental misconduct and fraud that would be due this litigant.

Plaintiff brings this action under the Constitution, Fed. R. Civ. P. 65, 18 U.S.C. 1031 and/or any other governmental anti-fraud laws, and C.F.R. 2635.704 and/or any other applicable Codes of Federal Regulations.

## JURISDICTION AND VENUE

Jurisdiction of this court is invoked pursuant to 28 U.S.C. 1346.

Venue is proper in this court pursuant to 28 U.S.C. 1391(b)&(c), and 28 U.S.C. 1402(b).

## FACTS

1. Plaintiff is a Maryland citizen. Plaintiff is also a well known Maryland and federal court litigator, both through counsel and *pro se*. Plaintiff has objected for some time to alleged

2

misconduct by Maryland Article III judges who, amongst many improper actions and conduct, have stolen plaintiff's physical property under 'color of law' and fined him hundreds of thousands of dollars for that privilege, have violated the U.S. Courts judicial canons to interfere in the appointments of their friends and cronies to the Maryland federal bench, as well as involving themselves in the actual firing of former U.S. Attorney Thomas M. DiBiagio in 2004/2005.

2. Since Spring 2013, plaintiff has also owned and operated "Baltimore Corruption Wire," which is a Maryland public policy initiative with many followers seeking to both stop rampant Maryland federal judicial and attorney ethical and criminal misconduct, and to educate the public regarding same.[1]

3. Toward this end, from midsummer 2013 to late fall 2013, and from late fall 2014 until present, plaintiff has conducted, amongst many other things, demonstrations at the Baltimore U.S. Courthouse that were supported by various advertising campaigns, including newspaper and web-based advertising campaigns, which received much notice.

4. During these numerous demonstrations, plaintiff has had great opportunity to speak with and/or come into physical contact with several Maryland Article III judges, many employees of the Maryland U.S. Attorney's Office, many Maryland federal bar members, many U.S. DOJ federal agents and employees, some Baltimore City Police Officers, some Maryland Department

---

[1] Plaintiff brings this complaint *pro se* and wholly in his individual capacity as a member of the public.

3

of Corrections Officers, a great and numerous amount of courthouse employees of varying degrees of responsibility, from custodial to the clerk's office, and a great and numerous amount of members of the public.

5. Many of these people were well aware of plaintiff's allegations that several Maryland Article III judges have been abusing their statuses for some time. Many were also familiar with plaintiff's advertising campaigns.

6. Many personal observations, by many people with first-hand knowledge, about the subject Article III judges were offered.

7. Surprisingly, some of these observations were offered by several unrelated federal agents and/or officers.

8. One, in particular, spoke about the fact that the U.S. Marshals Service for the District of Maryland (hereinafter "USMS MD") owns and maintains an indoor gun 'shooting' range at the Baltimore U.S. Courthouse.

9. This federal agent further stated that "some" Maryland Article III judges, and their associates, used the USMS MD's indoor courthouse gun range, even though it was "not allowed" and "against the rules" for them to use it.

10. Both the USMS MD and the U.S. DOJ have refused to answer to this plaintiff's concerns regarding the alleged public corruption, fraud, and misuse of the executive branch's subject property, nor refute plaintiff's allegations in this complaint, nor to offer any authorization by law and/or regulation permitting the judicial branch of the government to use the executive branch's USMS MD's gun range(s).

### COUNT I (Injunctive relief)

11. The Constitution separated the executive and the judicial branches of the government for a good reason.

12. The U.S. Courts maintains the Code of Conduct for all U.S. Judges, including the judicial canons they must follow, which are short and clear.

13. The USMS MD conducts a lot of business before the Maryland federal court and its judges.

14. Therefore, it is an irreconcilable conflict of interest for the USMS MD to be either giving and/or allowing the Maryland Article III judges, including any magistrate judges or associated judges, etc., to use the executive branch's resources in violation of the USMS MD's and/or U.S. DOJ's rules and regulations.

15. Further, it is a violation of 18 U.S.C. 1031 and C.F.R. 2635.704, and any other applicable laws, rules, codes, etc., for the executive branch to be giving to the judicial branch, absent

5

authorizing law and/or regulation, the free and unauthorized use of government property which is not also available on the same basis to the public.

16. Therefore, this court must immediately grant a permanent injunction against the illegal, unethical, and wrong use of the USMS MD's gun ranges by any and all Maryland Article III, and associated, judges.

### COUNT II (Qui Tam and/or Qui Tam-style relief & Fraud)

17. No Article III, or associated, judge needs to be told that they may not take a non-allowed and unpaid for benefit from the executive branch, or from anyone, without public disclosure, as the U.S. Courts judicial canons specifically speak about this prohibited practice.

18. And, as anyone involved in shooting sports knows, shooting is very expensive, both in expenses of cost and expenses of time.

19. Further, in Maryland, shooting ranges, because of gross governmental sanction and discouragement, are very rare. They are also, when granted zoning, very expensive to construct, for many reasons, including the environmental impact upon communities, which include air quality considerations. Easily, it is safe to allege -- indoor gun 'shooting' ranges in Maryland are very expensive to zone and to construct.

20. Therefore, the executive branch of the U.S. government is owed reimbursement associated with all costs regarding the misuse of the USMS MD's gun ranges by Maryland Article III, and associated, judges going back as far the law allows – for at least three (3) years, and as far back as ten (10) years or more under RICO and/or other complex fraud analysis's – such as:

- The value of the hours the Article III, and associated, judges would have spent traveling to and from the very limited Maryland public gun ranges where they would have been allowed to shoot.

- The cost of yearly memberships at those public gun ranges.

- The cost of daily range fees at those gun ranges.

- The cost of any ammunition and/or discounted ammunition supplied by the USMS MD.

- The cost of any targets supplied by the USMS MD.

- The cost of any instruction supplied by the USMS MD.

- The cost of any other thing of value received by Maryland Article III, and associated, judges supplied by the USMS MD.

- The court should also consider that the total costs to, and fraud committed against, the federal taxpayer in this matter is far, far higher than the minor, although, expensive costs and fees listed above, i.e., such as the actual gun 'shooting' range's real estate, zoning, construction, maintenance, etc., costs. In short, the court should consider whether the subject Articled III, and associated, judges were getting a 'free' indoor gun 'shooting' range on the 'cheap,' and/or 'for free' via the executive branch, and whether they should have to pay a 'pro-rated' percentage of all costs associated with said gun 'shooting' range, and/or ranges, from inception to completion – fees which would definitely stretch into the millions of dollars over the time period alleged.[2]

- Any interest due upon any of the above.

---

[2] It is unknown how many USMS MD gun ranges there are in Maryland that have been misused by Maryland Article III, and associated, judges. Further, it is very possible that this alleged problem is national in scope, as there are 93 U.S. district courts, and associated courts of appeals, in the United States.

## COUNT III

20. Plaintiff requests this court to order the executive branch to compensate this plaintiff in any and/or all ways that actions such as this require under the law, including payments as to percentages of recovered monies and any rewards so entitled from the exposé of public corruption and fraud.

## DEMAND FOR A JURY TRIAL

Plaintiff demands that this case be tried before a Jury.

Respectfully submitted,

_____
WILLIAM C. BOND
*Pro Se*
P.O. Box 4823
Baltimore, Maryland 21211
(443) 970-2887
proselitigator@aol.com

8